UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x

MITCHELL SULLIVAN,                          :

                         Petitioner,        :        **REPORT AND
                                                     RECOMMENDATION
        - against -        :        TO THE HONORABLE
                                                     SIDNEY H. STEIN**

NEW YORK STATE DEPARTMENT OF      :
CORRECTIONAL SERVICES, DIVISION        07 Civ. 7177 (SHS)(FM)
OF PAROLE,                                  :

                     Respondent.        :

----------------------------------------------------------x

**FRANK MAAS**, United States Magistrate Judge.

I.    <u>Introduction</u>

        Following a jury trial in Supreme Court, New York County, <u>pro se</u>

petitioner Mitchell Sullivan ("Sullivan") was convicted on felony charges arising out of a

failed burglary.  In this habeas corpus proceeding pursuant to 28 U.S.C. § 2254 ("Section

2254"), Sullivan alleges that his due process rights were violated (a) by the trial court's

erroneous jury instructions, and (b) because the New York State Department of

Correctional Services ("DOCS") administratively tacked a five-year period of post-

release supervision required by statute onto the seven-year prison sentence imposed by

the court following his conviction.

        The Respondent has now moved to dismiss Sullivan's amended petition as

time barred under the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA").  Although Sullivan's sentencing claim is meritorious, his petition is time

barred.  Accordingly, this proceeding should be dismissed.  As set forth below, even if the

statute of limitations were not an insurmountable obstacle, Sullivan would at best be

entitled to a writ excising the five-year term of post-release supervision from his sentence.

The People would remain free to seek a corrective order in state court.  Accordingly, as a

practical matter, Sullivan would not be able to avoid having his release conditioned on a

five-year period of post-release supervision.

II.     Background

        A.     Burglary

               Saint Clare's Hospital in Manhattan houses a convent of nuns on its sixth

floor.  (T. 192-93, 195-96).[1]  On November 28, 2000, after attending a counseling session

on the fourth floor of the Hospital, Sullivan went to the third floor, where he entered the

dispensary of the Hospital's methadone clinic.  (Id. at 194-95, 209, 245-48, 249-51, 313-

14, 329-30, 332).  Sullivan forced open a locked cabinet in the dispensary, only to find it

empty.  (Id. at 200-01, 206, 330, 332).  He then left the Hospital.  (Id. at 206-07, 314-15,

---

        [1]        "T." refers to the transcript of the trial.  "Pet." or "Petition" refers to Sullivan's
habeas petition, dated July 16, 2007.  "Am. Pet." refers to the amended petition Sullivan filed on
December 3, 2007.  "Resp't's Mem." refers to Respondent's memorandum of law in support of
its motion to dismiss Sullivan's Petition.  "Ex." refers to the exhibits attached to the declaration
of Assistant Attorney General Frederick H. Wen, dated December 17, 2007 ("Wen Decl.").
"Pet'r's Aff." refers to Sullivan's affidavit in opposition to Respondent's motion to dismiss,
sworn to on December 28, 2007.  "Pet'r's Ex." refers to the exhibits attached to Sullivan's letter
to the Court, dated December 31, 2007.

332).  Video footage confirmed that Sullivan was the intruder; he later was arrested and confessed to the burglary.  (Id. at 209, 249, 306-07, 330-32).

B.    Indictment and Trial

Sullivan was indicted on charges of Burglary in the Second Degree (in violation of New York Penal Law ("PL") § 140.25(2)) and Criminal Mischief in the Fourth Degree (in violation of PL § 145.00(1)).  (Id. at 438, 449-50).  His trial before Justice John K. Bradley commenced on June 14, 2001, and concluded on June 18, 2001, when the jury returned a verdict of guilty on both counts.  (Id. at 1, 471-72).

Prior to the verdict, Justice Bradley instructed the jury during his charge that a "dwelling [is] a building which is usually occupied by a person lodging therein at night."  (Id. at 439).  He also explained that "[i]f a part of a building is used as a dwelling, the entire building is a dwelling."  (Id. at 440).  Thereafter, in response to a note from the jury, Justice Bradley elaborated on these instructions, explaining that "where a building consists of two or more units separately secured or occupied, each unit shall be deemed both a separate building in itself and a part of a main building."  (Id. at 463, 466).

C.    Imposition and Service of Sullivan's Sentence

On September 10, 2001, Justice Bradley sentenced Sullivan, as a second violent felony offender, to determinate prison sentences of seven years on the burglary count and one year on the criminal mischief count, to be served concurrently.  (Am. Pet. ¶ 3; Ex. A).  Although the stenographic notes of the sentencing are missing and therefore

3

could not be transcribed, it is undisputed that Justice Bradley failed to advise Sullivan of

any period of post-release supervision.  Sullivan's Sentence and Commitment Order also

was silent with respect to any such requirement.  (Am. Pet. ¶¶ 2, 4, 14; Resp't's Mem. at

3; Exs. A, Q ¶ 4).

       Following his sentencing, Sullivan was assigned to the Downstate

Correctional Facility.  After he arrived there, DOCS prepared a form setting forth his

maximum expiration and conditional release dates, and provided him with a copy.  (See

Ex. B).  The form bears the notation "PRS 05 00 00," which evidently was intended to

reflect DOCS' decision to add a five-year period of post-release supervision to Sullivan's

sentence.  On or about February 19, 2002, Sullivan received a second such form

containing the same "PRS 05 00 00" notation.  (See id.).  More than four years later,

Sullivan attended a Time Allowance Committee Hearing, after which he was provided

with a third time computation form on December 11, 2006.  (See Pet. at 3; Ex. T). This

form also had a notation in the lower left-hand corner which read "PRS 05 00 00."

(Pet'r's Ex. E).

       Sullivan was released from DOCS custody on February 1, 2008.  See

http://nysdocs.docs.state.ny.us/GCA00P00/WIQ2/WINQ120 (last visited Aug. 12, 2008).

He later was arrested for violating the conditions of his release and spent time at Riker's

Island.  (See letters from Sullivan to the Court, dated Mar. 16, 29, & Apr. 5, 2008).  A

recent search of the databases of both the New York City Department of Correction and

the New York State Department of Correctional Services confirms that Sullivan is no

longer in custody.  Accordingly, we have sent a copy of this Report and Recommendation

to Sullivan at the last non-prison address he furnished the Court, which is the General

Delivery Window of the Farley Post Office Building.

        D.     <u>Subsequent Procedural History</u>

           1.     <u>Direct Appeal</u>

In July 2003, Sullivan appealed his conviction to the Appellate Division,

First Department.  In his brief, Sullivan claimed that:  (a) the trial court should have given

the jury a missing witness charge based on the People's failure to call a hospital worker

who had investigated the burglary; (b) the prosecutor engaged in improper vouching

during her summation; and (c) he improperly was adjudicated a predicate felon.  (<u>See</u> Ex.

E).

On February 24, 2004, the Appellate Division unanimously affirmed the

judgment of conviction.  <u>People v. Sullivan</u>, 4 A.D.3d 223 (1st Dep't 2004).  The court

held that Justice Bradley properly denied Sullivan's request for a missing witness charge

because the witness "could not provide material, noncumulative testimony."  The court

further observed that Sullivan's challenges to the prosecutor's summation were

unpreserved and that her remarks generally constituted fair comment.  <u>Id.</u> at 223-24.

Finally, the court held that Sullivan's sentencing claim was unpreserved and meritless.

<u>Id.</u> at 224.

On April 20, 2004, the New York Court of Appeals summarily denied Sullivan's application for leave to appeal from the affirmance of his conviction. <u>People v. Sullivan</u>, 2 N.Y.3d 765 (2004). Sullivan did not thereafter seek a writ of certiorari.

### 2.    First Motion to Vacate Judgment

On March 7, 2002, Sullivan filed a motion to vacate his judgment of conviction, pursuant to Section 440.10 of the New York Criminal Procedure Law ("CPL"). (Ex. C). In that motion, Sullivan argued that: (a) he was denied the effective assistance of trial counsel; (b) the indictment was not properly signed by a grand jury foreperson; (c) he improperly was denied a competency hearing; (d) the People failed to prove that he had entered a dwelling; (e) misleading evidence was presented at trial; (f) the court failed to give a missing witness charge; and (g) he improperly was adjudicated a second violent felony offender. (Exs. C-D). On July 8, 2002, Justice Bradley denied the motion. (<u>See</u> Resp't's Mem. at 4; Ex. K at 3; Ex. L at 2). Sullivan did not seek leave to appeal. (Resp't's Mem. at 4).

### 3.    Second Motion to Vacate Judgment

In March 2004, Sullivan filed another motion under CPL Section 440.10. In this motion, filed during the pendency of his application for leave to appeal the Appellate Division's denial of his direct appeal, Sullivan sought to have the judgment of conviction vacated on numerous grounds. Specifically, Sullivan claimed that: (a) his right to testify before the grand jury was violated; (b) the People's instructions to the

grand jury were not recorded; (c) the trial court improperly denied him a missing witness charge; (d) his suppression hearing was compromised by tampered evidence and the failure to assign an impartial judge; (e) a surveillance videotape and the broken lock to the cabinet in the dispensary should not have been admitted into evidence; (f) it was improper for the trial court to require that security officers escort him during the questioning of prospective jurors; (g) the People failed to prove that he entered a dwelling; (h) the court's jury charge was improper; and (i) he was denied the effective assistance of counsel.  (Exs. K at 2-3, L at 3).[2]  Justice Bradley denied Sullivan's motion on October 5, 2004.  (Ex. L at 5).  On February 3, 2005, the Appellate Division, First Department, denied his application for leave to appeal that decision.  (Ex. O).

    4.   <u>Motion to Set Aside Sentence</u>

On December 27, 2006, Sullivan filed a motion in Supreme Court, New York County, to set aside his sentence pursuant to CPL Section 440.20.  (Ex. P).  In that motion, Sullivan alleged that the five-year period of post-release supervision imposed by DOCS was unconstitutional and should be vacated.  (Exs. P, R).  On February 20, 2007, Justice Edwin Torres summarily denied the motion.  (Ex. S).  On March 16, 2007, Sullivan applied to the First Department for a certificate granting leave to appeal that

_____

[2]    The Respondent was unable to locate, and Sullivan has not supplied, a copy of his second motion to vacate the judgment of conviction.  (<u>See</u> Wen Decl. at 2 n.2).  Nonetheless, the opposing papers and decision denying that motion delineate Sullivan's claims.  (<u>See</u> Exs. K-M).

decision.  (Ex. T).  On June 21, 2007, the First Department denied that application.  (Ex. V).

> 5.    Habeas Petition

Sullivan's original habeas petition is dated July 16, 2007, and was received by the Pro Se Office of this Court on July 19, 2007.  (Docket No. 1).  In that Petition, Sullivan argued that the five-year period of post-release supervision imposed by DOCS should be vacated and that Justice Bradley improperly instructed the jury that the building he entered was a dwelling.  (Id.).  On December 3, 2007, Sullivan filed an amended habeas petition, which was received by the Pro Se Office on December 7, 2007.  (Docket No. 4).  The amended petition repeats the claims advanced in his first petition.  (Id.).

III.    Discussion

> A.    Timeliness

> 1.    Section 2244(d)(1)

Title 28, United States Code, Section 2244(d)(1) requires a state prisoner to file his habeas petition within one year of the latest of several triggering events.[3]  Here,

---

[3]    Under Section 2244(d)(1), the one-year limitations period runs from the latest of:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from

(continued...)

8

the only potentially applicable provisions are subsections (A) and (D).  Neither of these

subsections permits this Court to entertain the claims in Sullivan's petition, which was

filed three years after his conviction became final.

a.    <u>Timeliness Under Section 2244(d)(1)(A)</u>

Section 2244(d)(1)(A) requires a petitioner to commence a habeas

proceeding within one year of "the date on which the judgment became final by the

conclusion of direct review or the expiration of the time for seeking such review."  The

Second Circuit has interpreted "direct review" to include direct review by both the state

courts and the United States Supreme Court.  Accordingly, the conviction of a petitioner

who does not seek a writ of certiorari "be[comes] final for [AEDPA] purposes when his

time to seek direct review in the United States Supreme Court by writ of certiorari

expire[s].'"  <u>Williams v. Artuz</u>, 237 F.3d 147, 150 (2d Cir. 2001) (quoting <u>Ross v. Artuz</u>,

150 F.3d 97, 98 (2d Cir. 1998)).  Sullivan did not seek a writ of certiorari.  His conviction

therefore became final on July 19, 2004, ninety days after the date that the New York

_____

[3](...continued)
        filing by such State action;

        (C) the date on which the constitutional right asserted was initially
        recognized by the Supreme Court, if the right has been newly
        recognized by the Supreme Court and made retroactively
        applicable to cases on collateral review; or

        (D) the date on which the factual predicate of the claim or claims
        presented could have been discovered through the exercise of due
        diligence.

9

Court of Appeals denied his application for leave to appeal from the First Department's affirmance of the judgment of conviction.  See id. at 150-51.

Sullivan's first motion to vacate his judgment of conviction was filed on March 7, 2002, and was fully resolved before his conviction became final.  It therefore does not toll the limitations period.  See Fernandez v. Artuz, 402 F.3d 111, 116 (2d Cir. 2005) ("To toll the AEDPA statute of limitations, the state petition must be . . . 'pending' during the tolling period."); Smith v. McGinnis, 208 F.3d 13, 16 (2d Cir. 2000) (Section 2244(d)(2) tolls the statute of limitations only for actions that are "pending within [the] one-year grace period").  Similarly, Sullivan's motion to set aside his sentence was filed on December 27, 2006, after the one-year limitations period had expired, and therefore cannot affect the timeliness of his Petition.  See Smith, 208 F.3d at 17; Menjivar v. Sears, No. 06 Civ. 2854 (JG), 2007 WL 2274892, at *3 (E.D.N.Y. Aug. 7, 2007); King v. Cunningham, 442 F. Supp. 2d 171, 180 n.16 (S.D.N.Y. 2006).

Thus, the only motion for collateral relief that tolled the AEDPA limitations period was Sullivan's second motion to vacate the judgment of conviction, which was filed in March 2004, before his conviction became final, and remained pending thereafter. See 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward" the one-year limitation period in subsection 2244(d)).  The final disposition of that motion occurred on February 3, 2005, when the

Appellate Division denied Sullivan's application for leave to appeal.  (Ex. O).  Sullivan

therefore is entitled to 199 days of statutory tolling for the period between July 19, 2004

(when his conviction became final), and February 3, 2005 (when the Appellate Division

rendered its decision regarding his second motion to vacate the judgment of conviction).

This proceeding consequently should have been commenced by February 3, 2006, but

instead was commenced on July 16, 2007, 528 days late.

> b.   Timeliness Under Section 2244(d)(1)(D)

Section 2244(d)(1)(D) states that the AEDPA statute of limitations shall not

begin to run until "the date on which the factual predicate of the claim . . . could have

been discovered through the exercise of due diligence."  In keeping with this provision,

Sullivan argues that the limitations period did not being to run until December 11, 2006,

the date when he first realized that DOCS had added a five-year period of post-release

supervision to his sentence.  (Pet'r's Aff. at 6-7).  Such tolling could, of course, apply

only to Sullivan's sentencing claim.[4]

---

[4]   Sullivan's other claim is that Justice Bradley's jury instructions with respect to the "dwelling" element of the crime of Burglary in the Second Degree were defective.  He does not contend that he was unable to discover the factual predicate for this claim prior to the expiration of the AEDPA statute of limitations.  Indeed, in his second motion to vacate the judgment of conviction, Sullivan noted that "here existing in the records are violations [which] were of such a shocking nature that no reasonable person could have believed that they were constitutional." (Ex. M ¶ 8) (emphasis added).  Accordingly, since Sullivan concedes that this claim is record-based, unquestionably it is time barred.

Even if Sullivan's jury instruction claim were not time barred, Justice Bradley's decision denying Sullivan's second motion to vacate the judgment of conviction rejected the

(continued...)

Under Section 2244(d)(1)(D), a court must "determine when a duly diligent person in [Sullivan's] circumstances would have discovered [the factual predicate] for his sentencing claim." <u>Wims v. United States</u>, 225 F.3d 186, 190 (2d Cir. 2000). The relevant question is when the facts <u>could</u> <u>have</u> been discovered through due diligence, "regardless of whether petitioner actually discovers the relevant facts at a later date." <u>Adams v. Greiner</u>, 272 F. Supp. 2d 269, 273-74 (S.D.N.Y. 2003) (quoting <u>Wims</u>, 225 F.3d at 188); <u>accord</u> <u>Williams v. Phillips</u>, No. 04 Civ. 4653 (DAB)(AJP), 2005 WL 1806161, at *10 (S.D.N.Y. Aug. 2, 2005). Moreover, it is the petitioner's "burden to demonstrate why he was unable to discover the factual predicate of his claim before the date asserted." <u>Yekimoff v. N.Y. State Div. of Parole</u>, No. 02 Civ. 8710 (BSJ), 2004 WL 1542256, at *5 (S.D.N.Y. July 8, 2004) (citing <u>Duamutef v. Mazzuca</u>, No. 01 Civ. 2553

---

[4](...continued)

claim on two grounds: that his "instructions to the jury were proper and [that Sullivan] never objected." (Ex. L at 4). Although the Justice addressed the merits, his reliance on the failure of Sullivan's counsel to make a timely objection is, by itself, an adequate and independent state ground for the denial of Sullivan's jury charge claim. <u>See</u> CPL § 470.05(2) (McKinney 1994) (claim must be raised at trial to preserve it for appellate review); <u>Zarvela v. Artuz</u>, 364 F.3d 415, 418-19 (2d Cir. 2004) (claim regarding jury charge is procedurally defaulted where state court relied on lack of a contemporaneous objection); <u>Fama v. Comm'r of Corr. Servs.</u>, 235 F.3d 804, 811 n.4 (2d Cir. 2000) (claim is not preserved when the state court relies on a procedural bar but also rules on the merits in the alternative).

This Court therefore cannot consider Sullivan's jury charge claim unless Sullivan can demonstrate either "cause for the default and actual prejudice as a result of the alleged violation of federal law" or "that failure to consider the claims will result in a fundamental miscarriage of justice." <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991); <u>accord</u> <u>Fama</u>, 235 F.3d at 809; <u>Glenn v. Bartlett</u>, 98 F.3d 721, 724 (2d Cir. 1996). In his papers, Sullivan has shown neither cause and prejudice nor that he actually is innocent. The Court therefore would be precluded from considering his procedurally-defaulted jury instruction claim even if it were deemed timely.

(WHP)(GWG), 2002 WL 413812, at *8-9 (S.D.N.Y. Mar. 15, 2002), and Sorce v. Artuz,

73 F. Supp. 2d 292, 298 (S.D.N.Y. 1999)).

Here, Sullivan was given information regarding the five-year post-release

supervision period as early as October 2001 when DOCS provided him with its first time

computation form.  In February 2002, Sullivan again was furnished with a time

computation form that contained the "PRS 05 00 00" notation.  Sullivan admits that he

read both forms, but claims that he overlooked the post-release supervision notations

because he was "only concerned with when the release date [would] be activated."

(Pet'r's Aff. at 5).

More than four years later, on November 27, 2006, Sullivan attended a

Time Allowance Committee Hearing.  (See Pet. at 3; Ex. T).  After the hearing, DOCS

provided Sullivan with yet another time computation sheet on December 11, 2006.

(Pet'r's Ex. E).  Like the prior two forms, this form had a notation in the lower left-hand

corner which read "PRS 05 00 00."  (Id.).  It was only after his receipt of this third form

that Sullivan chose to investigate the meaning of the "PRS" notation.  (See Pet'r's Aff. at

5-7).  Nevertheless, Sullivan had this same information as early as October 10, 2001.

Although it is perhaps understandable that Sullivan did not comprehend the meaning of

the "PRS" notation when he first saw it, a duly diligent person in his circumstances would

have learned the meaning of the "PRS" notation well before 2006.  His Petition, which

was filed almost five years after he received the first time computation form, consequently is time barred.

Seeking to overcome this conclusion, Sullivan argues that he could not have discovered the administrative addition of post-release supervision to his sentence at an earlier time because of his limited education and mental illness. (Id. at 1-2). Sullivan also notes that he "harbored shame" which caused him not to ask anyone to help him understand the meaning of the "PRS" notation. (Id. at 1). As a matter of law, however, neither assertion serves to excuse his delay.

In determining whether a petitioner has exercised due diligence, courts do not "consider such subjective factors as the petitioner's intelligence, education, language skills, or mental stability." Gonzalez-Ramos v. United States, No. 05 Civ. 3974 (LAP), 2007 WL 1288634, at *7 (S.D.N.Y. May 2, 2007) (quoting Rodriguez v. New York, No. 01 Civ. 9374 (KMW)(AJP), 2003 WL 289598, at *17 (S.D.N.Y. Feb. 11, 2003)). As the Seventh Circuit cautioned in Owens v. Boyd, 235 F.3d 356, 359 (7th Cir. 2000), "[i]f [Section] 2244(d)(1) used a subjective rather than an objective standard, then there would be no effective time limit." In that case, the petitioner was a gang member with limited education who knew "little about the law." The court nevertheless declined to give weight to those factors, observing that if they were relevant, Section 2244(d)(1) "might as well not exist" for "few prisoners are lawyers." Owens, 235 F.3d at 359.

In support of his habeas petition, Sullivan has submitted medical records indicating that he is bipolar and suffers from other psychiatric problems.  (Pet'r's Exs. A-B, D; Pet'r's Aff. at 1, 7).  As noted, these factors may not be considered in deciding whether Sullivan's petition is timely.  In any event, even if this Court were to consider his medical records, Sullivan has not explained why his mental problems prevented him from investigating the meaning of the "PRS 05 00 00" notation.  Indeed, notwithstanding his alleged mental problems, during the time that Sullivan spent in prison following his conviction, he has managed to file three post-conviction motions, the present proceeding, and two other federal habeas proceedings.[5]  (See Resp't's Mem. at 7; Exs. C, L, P).  In light of that extensive litigation history, Sullivan cannot show that his mental problems and limited education precluded him from discovering the factual predicate for his claim and taking appropriate action at an earlier date.  See Vaughan v. Lape, No. 05 Civ. 1323, 2007 WL 2042471, at *5 (N.D.N.Y. July 12, 2007) (finding habeas petition time barred because "[d]ue diligence required [petitioner to] . . . take notice of the Probation Department's mistakes at th[e] time [when he could have received a copy of the presentence report]").  Sullivan therefore is not entitled to have the one-year AEDPA statute of limitations tolled under Section 2244(d)(1)(D).

_____

[5]    According to the Respondent, (see Resp't's Mem. at 7), the first such petition, filed in this District in May 2005, was dismissed without prejudice.  Sullivan v. Breslin, No. 05 Civ. 4375 (MBM)(MHD) (S.D.N.Y. 2005).  The second petition, filed in the Northern District of New York in May 2007, challenged only his loss of good time credits.  Sullivan v. Graham, No. 07 Civ. 0499 (DNH)(GHL), 2008 WL 2074047 (N.D.N.Y. May 14, 2008).

2.    Equitable Tolling

Even if statutory tolling is unavailable, a habeas petitioner may, in rare

circumstances, be able to avoid the operation of the statute of limitations through the

application of the doctrine of equitable tolling.  "Generally, a litigant seeking equitable

tolling bears the burden of establishing two elements:  ([a]) that he has been pursuing his

rights diligently; and ([b]) that some extraordinary circumstance stood in his way."  Pace

v. DiGuglielmo, 544 U.S. 408, 418 (2005).

Sullivan's equitable tolling argument relies on the same impediments that

allegedly formed the basis for his claim that the statute of limitations should be tolled

under Section 2244(d)(1)(D).  However, because Sullivan did not make a sufficient

showing of due diligence under that provision, he clearly cannot invoke the doctrine of

equitable tolling.  See Rodriguez, 2003 WL 289598, at *20 ("Although the equitable

tolling doctrine contains a 'reasonable diligence' requirement similar (if not identical) to

the 'due diligence' requirement of 28 U.S.C. § 2244(d)(1)(D), equitable tolling raises the

bar considerably by also requiring 'extraordinary circumstances.'"), Report & Rec.

rejected on other grounds, No. 01 Civ. 9374 (KMW), 2004 WL 5575050 (S.D.N.Y. Sept.

7, 2004); see also Victorial v. Burge, 477 F. Supp. 2d 652, 654-55 (S.D.N.Y. 2007)

(petitioner's evidence of bipolar disorder did not warrant equitable tolling because he

failed to allege how the disorder prevented him from filing diligently and he had made

other filings during the relevant period); Francis v. Miller, 198 F. Supp. 2d 232, 235

16

(E.D.N.Y. 2002) (limited education and ignorance of law were "not extraordinary circumstances that warrant equitable tolling"); <u>Rhodes v. Senkowski</u>, 82 F. Supp. 2d 160, 173 (S.D.N.Y. 2000) ("A petitioner has the burden to show that [his] health problems rendered him unable to pursue his legal rights during the one-year time period.").  <u>But see</u> <u>Diaz v. Kelly</u>, 515 F.3d 149, 154 (2d Cir. 2008) (English language deficiency may warrant equitable tolling under AEDPA).

     B.   <u>Merits</u>

     If the Court were to reach the merits of Sullivan's Petition, he would be entitled to have the administratively-imposed period of post-release supervision nullified. Nevertheless, his victory would be pyrrhic because the State would be entitled to seek his resentencing.

     Sullivan's sentencing claim is based on <u>Earley v. Murray</u>, 451 F.3d 71, 75-77 (2d Cir. 2006), a case in which the Second Circuit held that a five-year post-release supervision term added to the petitioner's sentence was invalid.  In reaching this conclusion, the <u>Earley</u> court relied on <u>Hill v. United States ex rel. Wampler</u>, 298 U.S. 460, 464 (1936).  There, the Supreme Court held that "[t]he only sentence known to the law is the sentence or judgment entered upon the records of the court."  <u>Earley</u>, 451 F.3d at 74.

     Here, as in <u>Earley</u>, Sullivan was sentenced in state court but never was advised that an additional five years of post-release supervision might be part of his

sentence.  Accordingly, if his Petition were timely, Sullivan would be entitled to a writ of habeas corpus vacating the five-year period of post-release supervision and releasing him from any custody resulting from its imposition.  In Earley, however, the Second Circuit expressly noted that it was granting this relief without prejudice to the state's right to move "in the New York courts to modify [petitioner's] sentence to include the mandatory [post-release supervision] term."  451 F.3d at 77.  The Earley court expressed no opinion as to whether this was feasible.

More recently, in People v. Sparber, 10 N.Y.3d 457, 469-71 (2008), the New York Court of Appeals confirmed that the administrative imposition of a term of post-release supervision to a sentence is improper.  The court also noted that "[t]he sole remedy for a procedural error such as this is to vacate the sentence and remit for a resentencing hearing so that the trial judge can make the required pronouncement."  Id. at 471; accord Garner v. DOCS, 10 N.Y.3d 358, 362-63 (2008); see also Walker v. Perlman, 556 F. Supp. 2d 259, 265 (S.D.N.Y. 2008) (granting writ unless DOCS corrected its records to remove the post-release supervision term); Earley v. Murray, No. 03 Civ. 3104, 2007 WL 1288031, at *3 (E.D.N.Y. May 1, 2007) (concluding, on remand, that the writ should be granted, with its execution stayed so that the District Attorney may seek a nunc pro tunc order correcting the sentence to include a post-release supervision term).

As a consequence, if Sullivan had filed a timely petition challenging the imposition of his post-release supervision term, the Court would have been obliged to

18

grant it.  However, in that circumstance, the State would retain the right to ask Justice

Bradley to impose the statutorily-required five-year period of post-release supervision

<u>nunc</u> <u>pro</u> <u>tunc</u> at a resentencing proceeding.  <u>See</u> <u>Earley</u>, 2007 WL 1288031, at *3

(describing a state court judge's failure to impose a period of supervision as a "ministerial

error that may be rectified easily").

IV.    <u>Conclusion</u>

          This habeas proceeding is untimely and therefore should be dismissed.

Nonetheless, even if the petition were to be granted, the State would be entitled to have

Justice Bradley correct his earlier sentencing error.  Therefore, as a practical matter,

Sullivan will not be able to avoid having his release conditioned on a five-year period of

post-release supervision.

V.    <u>Notice of Procedure for Filing of Objections to this Report and Recommendation</u>

          The parties shall have ten (10) days from the service of this Report and

Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule

72(b) of the Federal Rules of Civil Procedure.  <u>See also</u> Fed. R. Civ. P. 6(a) and (d).  Any

such objections shall be filed with the Clerk of the Court, with courtesy copies delivered

to the chambers of the Honorable Sidney H. Stein and to my chambers at the United

States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing

parties.  <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b).  Any requests for an

extension of time for filing objections must be directed to Judge Stein.  The failure to file

timely objections will result in a waiver of those objections for purposes of appeal. <u>See</u>

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); <u>Thomas v. Arn</u>, 474 U.S. 140

(1985); <u>Frank v. Johnson</u>, 968 F.2d 298, 300 (2d Cir. 1992).


Dated:      New York, New York
            August 14, 2008

                                            _____
                                            FRANK MAAS
                                            United States Magistrate Judge



Copies to:

Mitchell Sullivan
c/o General Delivery Window
Farley Post Office Building
390 Ninth Avenue
New York, New York 10001

Frederick H. Wen
Assistant Attorney General
Office of the Attorney General
    of the State of New York
120 Broadway
New York, New York 10271